Case 1:09-cv-22826-MGC Document 21-7 Entered on FLSD Docket 07/14/2010 Page 1 of 7
02-06-09;02:43PM;RICHARD J DIAZ PA ;305-444-8178 # 2/ 17

Case 1:09-cr-20044-PCH Document 15 Entered on FLSD Docket 02/03/2009 Page 1 of 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-20044-Cr-Huck/O'Sullivan

UNITED STATES OF AMERICA

v.

RICARDO FIGUEREDO,
         Defendant.
_____/

## GOVERNMENT'S FACTUAL BASIS IN SUPPORT OF ENTRY OF GUILTY PLEA

Pursuant to Rule 11(b)(3) of the Federal Rules of Criminal Procedure, the United States of America, through the undersigned Assistant United States Attorney, submits the following factual basis in support of the entry of a guilty plea by defendant Ricardo Figueredo to the Information in this case that charges him with bank fraud, in violation of Title 18, United States Code, Section 1344. Because the factual basis set forth below serves the limited purpose of supporting the defendant's guilty plea in this case, it does not purport to represent all facts and circumstances relating to defendant's participation in this offense. Through his signature on the last page of this document, the defendant confirms that he has discussed the factual basis with counsel and that the factual basis is true and correct to the best of the defendant's knowledge.

If this case were to trial, the United States would establish the following:

Page 1 (Feb. 3, 2009)        Assistant United States Attorney
                                                     Attorney for Defendant
                                                     Defendant


EXHIBIT E

Case 1:09-cv-22826-MGC   Document 21-7   Entered on FLSD Docket 07/14/2010   Page 2 of 7
02-06-09;02:43PM;RICHARD J DIAZ PA                              ;305-444-8178           #   3/   17

Case 1:09-cr-20044-PCH   Document 15   Entered on FLSD Docket 02/03/2009   Page 2 of 7

1. At all times relevant to this case, the deposits of Bank of America and its predecessor institutions NationsBank and Barnett Bank were insured by the Federal Deposit Insurance Corporation.

2. From on or about September 30, 1998, until the termination of his employment on or about May 2, 2008, the defendant, was employed by Bank of America as Assistant Branch Manager for the Bank of America branch that was located at 401 Lincoln Road on Miami Beach, FL.

3. Prior to becoming employed at Bank of America, the defendant was employed by Bank of America's predecessor institutions, Barnett Bank and NationsBank. The defendant was first employed by Barnett Bank starting in the early-to-mid 1980s and continued to remain so employed when Barnett Bank merged into NationsBank on or about January 9, 1998. The defendant remained employed NationsBank from the time of the merger with Barnett Bank until NationsBank became Bank of America on or about September 30, 1998.

4. As Assistant Branch Manager with Bank of America, the defendant's job responsibilities included servicing customers who resided outside of the United States but who maintained accounts with Bank of America in South Florida. Although not his official title, while at Bank of America the defendant held himself out as the bank's "international assistant manager" and went as far as to print up business cards identifying that as his job title. When employed at Barnett Bank and NationsBank, the defendant's responsibilities also included servicing customers who resided outside of the United States but who maintained accounts in South Florida.

5. In approximately the mid-1990s, the defendant started embezzling funds from the accounts of bank customers. From the mid-1990s until the termination of his employment on or

Case 1:09-cv-22826-MGC   Document 21-7   Entered on FLSD Docket 07/14/2010   Page 3 of 7
02-06-09;02:43PM;RICHARD J DIAZ PA                                    ;305-444-8178         #   4/ 17

Case 1:09-cr-20044-PCH   Document 15   Entered on FLSD Docket 02/03/2009   Page 3 of 7

about May 2, 2008, the defendant embezzled funds from the accounts of in excess of 20 victim customers. Over the course of the scheme, the defendant embezzled approximately $29,591,540 from the accounts of the different victim customers.

6. The defendant targeted bank customers who resided outside of the United States and who owned accounts with large deposits, generally in excess of $100,000. A number of the victim customers had deposits in excess of $1 million. The victim customers maintained accounts in the United States because of the perceived superior security of the U.S. banking system.

7. The defendant enlisted the trust of the victim customers by purporting to provide attentive service and, in some circumstances, by purporting to secure interest rates that were substantially higher than generally available rates of return.

8. The defendant caused the victim customers to take steps that limited their ability to monitor account activity and thus enabled the defendant to misappropriate funds from the customers' accounts, without their knowledge or consent. To minimize the possibility that either the customers or bank officials would learn of his misappropriations, the defendant engaged in conduct that included the following:

a. The defendant encouraged victim customers to conduct all of their banking business with him, because of their longstanding relationships with him.

b. The defendant also told one of the victim customers that his account was access-restricted and that he (that is, the defendant) was the only bank officer authorized to assist them.

Page 3 (Feb. 3, 2009)                                          Assistant United States Attorney
                                                               Attorney for Defendant
                                                               Defendant

Case 1:09-cv-22826-MGC   Document 21-7   Entered on FLSD Docket 07/14/2010   Page 4 of 7
02-06-09;02:43PM;RICHARD J DIAZ PA                                    ;305-444-8178         #   5/ 17

Case 1:09-cr-20044-PCH   Document 15   Entered on FLSD Docket 02/03/2009   Page 4 of 7

c. The defendant encouraged victim customers to have their account statements mailed to him by convincing them that mail service in their home countries was not secure, that their account statements could be easily stolen, and that as a result they could be subject to kidnaping, extortion, or other acts of violence.

d. The defendant discouraged victim customers from electronically monitoring their account activity by telling them that on-line banking was not secure.

e. The defendant encouraged the victim customers to provide the bank with the defendant's name and cell phone number as the person to contact in case issues arose with their accounts.

9. The defendant did not advise the victim customers that his true purpose in making these statements, representations, and recommendations was to enable him to misappropriate funds from the customers' accounts, without the knowledge or consent of the customers and without the customers or bank officials learning of the defendant's misappropriations.

10. The defendant misappropriated substantial amounts of customer funds for his own benefit. Over the course of the scheme, the defendant misappropriated in excess of $11 million in customer funds to invest in various business ventures in Guatemala, Spain, and elsewhere. These business ventures did not yield any profits. They all either failed entirely or lost most of their value.

11. The defendant further misappropriated in excess of $1 million in customer funds to support various lifestyle extravagances for himself and others. These extravagances included driving high-priced luxury automobiles; obtaining expensive jewelry for himself and others; maintaining an

Page 4 (Feb. 3, 2009)                                    Assistant United States Attorney
                                                         Attorney for Defendant
                                                         Defendant

Case 1:09-cv-22826-MGC   Document 21-7   Entered on FLSD Docket 07/14/2010   Page 5 of 7
02-06-09;02:43PM;RICHARD J DIAZ PA                                    ;305-444-8178          #   6/  17

Case 1:09-cr-20044-PCH   Document 15   Entered on FLSD Docket 02/03/2009   Page 5 of 7

apartment on Miami Beach for approximately 10 years; routinely treating friends, associates, and co-workers to meals and flowers; and routinely spending substantial amounts at bars and nightclubs.

12. In order to impede detection of the scheme and to lull the victim customers into a false sense of security:

  a. The defendant also misappropriated substantial amounts of funds from certain customers in order to meet periodic interest payments owed to other customers or to meet requests from customers to withdraw funds from their accounts. Through this Ponzi-type method that the defendant deployed through the course of the scheme, the defendant misappropriated in excess of $11 million for these purposes.

  b. When victims requested receipts or other account records, the defendant created fraudulent records to conceal his theft and lull the victims into a false sense of security.

13. In order to further impede detection of the scheme, the defendant attempted to conceal his misappropriation of customer funds by directing those funds into shell and nominee accounts that the defendant controlled, rather than into accounts that were readily traceable to him.

14. On or about March 11, 2008, the defendant, who was in Guatemala on vacation, phoned the manager of the Lincoln Road branch of Bank of America. The defendant advised the manager that he had a client named E.B. The defendant claimed that E.B. needed an immediate wire transfer of $1.2 million from his certificate of deposit (CD) account at Bank of America to a business account at Bank of America in the name Controladora de Negocios. On the same day, the manager completed the transaction from E.B.'s account at Bank of America, based upon the defendant's

Page 5 (Feb. 3, 2009)                                  Assistant United States Attorney
                                                       Attorney for Defendant
                                                       Defendant

Case 1:09-cv-22826-MGC Document 21-7 Entered on FLSD Docket 07/14/2010 Page 6 of 7
·02-06-09;02:43PM;RICHARD J DIAZ PA ;305-444-8178 # 7/ 17

Case 1:09-cr-20044-PCH Document 15 Entered on FLSD Docket 02/03/2009 Page 6 of 7

verbal request. In actuality, the Controladora de Negocios account was an account owned by V.G., who was a separate victim customer. The defendant caused the movement of funds from E.B.'s account to V.G.'s account in order to cover the defendant's theft of funds from V.G. Victim customer E.B. was not aware of the $1.2 million transfer from his CD account and did not authorize it.

15. Notwithstanding the defendant's efforts over the course of the scheme to prevent victim customers from monitoring activity, victim customer E.B. obtained a copy of his March 2008 account statement. On April 21, 2008, E.B. contacted a Bank of America security official to lodge a complaint regarding a discrepancy on the March 2008 account statement. E.B. advised that the statement reflected withdrawals of two CDs, each of which was worth $600,000. Although records indicated that the funds had been deposited into the Controladora de Negocios account (from where they were promptly wired at the request of victim customer V.G. to an account in Mexico City), E.B. advised that he had no interest in Controladora de Negocios. E.B. added that he suspected that the defendant had been responsible for the movement of his money.

16. Following his meeting with the security officer, E.B. was instructed to meet with the manager of the Lincoln Road branch of Bank of America. Later on April 21, 2008, E.B. went to the Lincoln Road branch. While there, the defendant met E.B.. The defendant advised E.B. that he had needed the money for personal reasons that were a "matter of life and death." The defendant told E.B. that the money would be replaced immediately and proceeded to make a telephone call. Following the phone call, the defendant told E.B. that he had opened for E.B. a 36-month CD worth

Assistant United States Attorney
Attorney for Defendant
Defendant

Case 1:09-cv-22826-MGC   Document 21-7   Entered on FLSD Docket 07/14/2010   Page 7 of 7
02-06-09;02:43PM;RICHARD J DIAZ PA                        ;305-444-8178        #   8/  17

Case 1:09-cr-20044-PCH   Document 15   Entered on FLSD Docket 02/03/2009   Page 7 of 7

slightly in excess of $1.8 million, with an interest rate of 5.56%, which was approximately twice the going rate.

17. The defendant then created a false document in an ultimately unsuccessful attempt to fund the new CD. The document purported to originate from a Bank of America customer named M.D., who purported to represent himself as a real estate partner of E.B. In the document, M.D. purported to authorize the bank to reimburse E.B. from his account. When a bank official was unable to authenticate the request, he directed the defendant to instruct M.D. to go to U.S. Embassy in Jamaica. The defendant did not contact M.D. and instead falsely reported back to the bank official that M.D. refused and claimed to be insulted by the request.

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

Date: 2/3/09

By: _____
MICHAEL S. DAVIS
ASSISTANT UNITED STATES ATTORNEY

Date: 2/3/09

By: _____
DAVID M. EDELSTEIN
ATTORNEY FOR DEFENDANT

Date: 2/3/09

By: _____
RICARDO FIGUEREDO
DEFENDANT